UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUCAS OSBORNE,

       Plaintiff,

v.

VANCOUVER POLICE, CITY OF VANCOUVER, CLARK COUNTY SHERIFF'S OFFICE, SGT. ANDY HAMLIN, ALAN EARHART, CHARLIE AHN, SGT. EASTMAN, JOSH GONZALES,

       Defendants.

No. C15-5877 BHS-KLS

**REPORT AND RECOMMENDATION**
**Noted for: March 10, 2017**

  Defendants Charlie Ahn and Andy Hamlin assert that they are entitled to qualified immunity and seek dismissal of Plaintiff Lucas Obsborne's claims against them on that basis. The City of Vancouver and the Vancouver Police Department ("VPD") assert they are entitled to summary judgment dismissal pursuant to Fed. R. Civ. P. 56 of plaintiff's claims against them. The Vancouver Defendants' motion for summary judgment was filed on October 24, 2016. *Id.* On the same day, Vancouver Defendants provided notice to plaintiff pursuant to *Woods v. Carey*, 684 F.3d 934, 935, 940–41 (9th Cir. 2012). Dkt. 52. On October 26, 2016, Defendant Josh Gonzales filed a motion for summary judgment and provided notice to plaintiff of his motion.

Dkts. 57 and 58[1]. On November 8, 2016, the Court granted, in part, Mr. Osborne's request for an extension of these motions. Dkt. 65. Mr. Osborne was directed to file his responses to both summary judgment motions by December 12, 2016. *Id.* Despite the additional time, Mr. Osborne filed no papers in opposition to the summary judgment motions.[2]

On January 27, 2017, Mr. Osborne filed a response. Dkt. 80. It is not clear whether the response addresses the Vancouver Defendants' summary judgment motion but in any event, it has not been considered as it was not timely filed.

If a summary judgment motion is unopposed, Rule 56 "authorizes the court to consider a fact as undisputed," but it does not permit the court to grant summary judgment by default. Under the summary judgment standard, if the moving party fails to meet its initial burden of production, the opposing party need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir.2000). The Court therefore, addresses the Vancouver Defendants' motion for summary judgment on the merits.

Having reviewed the motion for summary judgment, declarations, the Amended Complaint (Dkt. 23), and balance of the record, and for the reasons set forth herein, the undersigned recommends that the Vancouver Defendants' motion for summary judgment be granted.

---

[1] Defendant Gonzales' motion for summary judgment is the subject of a separate report and recommendation. A third motion for summary judgment filed by the Clark County defendants is also pending but is noted for January 20, 2017. Dkt. 67.

[2] On January 9, 2017, almost a month after Mr. Osborne's response to the summary judgment motion was due, the Court received letters from Mary Eibl and Liana Graf with their description of Mr. Osborne's arrest. Dkts. 75 and 76. Although they purport to be affidavits, they are not signed under oath and they are not attached to a motion or response. Accordingly, the letters have not been considered.

REPORT AND RECOMMENDATION - 2

## PLAINTIFF'S CLAIMS AND ASSERTED FACTS

Mr. Osborne's only claim is that the defendants used excessive force when they arrested him on October 2, 2015. In his amended verified complaint, Mr. Osborne alleges that Vancouver Police and Clark County officers came to the residence of his girlfriend, Desiree Moreno, searching for him and although they were told repeatedly that Mr. Osborne was not there and Ms. Moreno made multiple calls to 911 asking for the officers to leave the property, they arrested Ms. Moreno and located Mr. Osborne in the master bedroom. Mr. Osborne claims that he did not resist arrest or pose any threat but states that he put his hands in the air and did as he was directed. He alleges that even though he was not resisting, the offices threw him against the television, threw him on the bed, and while on the bed, double-lock handcuffed him, kneed him in the stomach, and threw him to the ground. "While still handcuffed and on the ground with my face slamed [sic] into the ground, Detective Ahn jumped on his back injuring him again and then slammed his metal baton in his neck." Mr. Osborne further alleges that after the officers took him outside, they refused him access to shoes and slammed him up against the house and then against the SUV in the driveway. Dkt. 23 (Amended Complaint), at 3. Mr. Osborne seeks damages for back and knee pain. *Id.*, at 4.[3]

Mr. Osborne stated no factual allegations or claims against the City of Vancouver or VPD in his amended complaint. *Id.*

//

//

---

[3] Mr. Osborne also asks for "emotional distress of the loss of my unborn child of 1.5 million," along with punitive damages. Dkt. 23 at 4. Mr. Osborne's claims on behalf of his girlfriend and his girlfriend's mother were previously dismissed. Dkt. 19, at 2.

REPORT AND RECOMMENDATION - 3

## DEFENDANTS' STATEMENT OF FACTS

Sandra Aldridge, an officer of the VPD and detective assigned to the Domestic Violence Unit, was asked to complete a follow-up investigation regarding pending criminal domestic violence cases involving Mr. Osborne as the defendant. One of the cases involved Desiree Moreno as the victim and as part of these cases, a No Contact Order was served on Mr. Osborne on July 30, 2015. The No Contact Order does not expire until July 30, 2020. Dkt. 54, Declaration of Sandra Aldridge, Ex. 1 at 3. Based on video evidence of multiple contacts between Mr. Osborne and Ms. Moreno, while Mr. Osborne was jailed for the assaults in the two domestic violence cases, Detective Aldridge concluded probable cause existed to arrest Mr. Osborne for nine counts of felony violation of a No Contact Order DV. *Id.*, Ex. 1 at 3-4. In addition, Detective Aldridge checked Mr. Osborne's criminal history, which included two convictions for violation of court no contact orders. *Id.*, Ex. 1 at 4. On October 2, 2015, Detective Aldridge went to Ms. Moreno's residence to arrest Mr. Osborne. *Id.*, Ex. 1 at 4. Officers had received information from neighbors that Mr. Osborne lived at Ms. Moreno's address and was often seen there. Dkt. 55, Declaration of Charlie Ahn, Exhibit 1, p. 3.

Detective Aldridge was accompanied by Vancouver Police Detective Charlie Ahn and Clark County Deputy Sheriff Alan Earhart. Id., Aldridge Decl., Ex. 1 at 4; Dkt. 55, Ahn Decl., Ex. 1 at 4. Detectives Aldridge and Ahn and Deputy Earhart spoke to Ms. Moreno at the front door. Ms. Moreno initially said that Mr. Osborne was not in the house. Dkt. 55, Ahn Decl., Ex. 1 at 4. Detective Aldridge left the scene to begin securing a warrant to enter the house, which left Detective Ahn and Deputy Earhart at the front door with Ms. Moreno. The officers remained at the front door after Detective Aldridge left the scene. *Id.*

Soon thereafter, Vancouver Police Sergeant Andy Hamlin arrived and tried to convince Ms. Moreno to let the officers inside her house. *Id.* According to Detective Ahn, Ms. Moreno had a "concerned look and it felt as if all of her statements of him not being here and demanding warrants was an act for Lucas [Osborne]." *Id.* Ms. Moreno, now in tears, mouthed the words "arrest me" to Detective Ahn while holding her wrists together. *Id.*, Ex. 1 at 5. Unsure what she meant, Detective Ahn leaned in at which point Ms. Moreno asked him "to pretend to arrest her and then take her to a police car and then we could get Lucas out of the house." *Id.* Sgt. Hamlin and Detective Ahn then proceeded to "arrest" Ms. Moreno by loudly announcing in the entry way that "Desiree … was under arrest for obstruction." *Id.* Ms. Moreno was then escorted to a CCSO Deputy's patrol car and was secured in the back seat. *Id.*

Detective Ahn, Sgt. Hamlin, and Deputy Earhart then entered the house to begin a "slow clear," and found Mr. Osborne hiding in the closet of the back bedroom. *Id.* The officers ordered Mr. Osborne out of the closet and told him to lie on the ground. *Id.* According to Detective Ahn and Sgt. Hamlin, ordering a suspect to the ground is "standard police practice … because doing so prevents the suspect from fighting back and reaching potential weapons." Dkt. 55, Ahn Decl., ¶ 4; Dkt. 56, Hamlin Decl. ¶ 2. Mr. Osborne recalls being told to "put your hands up" but cannot recall whether the officers said anything else such as get down on the ground. Dkt. 53, Declaration of Attorney Daniel G. Lloyd, Ex. C (Excerpts from October 12, 2016 Deposition of Lucas Osborne), at 79:21-25.

According to the officers on the scene, Mr. Osborne came out of the closet, refused to lie on the ground and instead remained standing. Dkt. 55, Ahn Decl. ¶ 4 & Ex. 1 at 5; Dkt. 56, Hamlin Decl. ¶ 2. When Detective Ahn and Sgt. Hamlin approached Mr. Osborne to take him to the ground he tensed up his body. Dkt. 55, Ahn Decl. ¶ 4; Dkt. 56, Hamlin Decl. ¶ 2. Once Mr.

REPORT AND RECOMMENDATION - 5

Osborne was on the ground and to ensure that Mr. Osborne would not continue to resist, Sgt. Hamlin used body weight to control Mr. Osborne. Deputy Earhart pinned Mr. Osborne down with his ASP. Dkt. 55, Ahn Decl. ¶¶ 3-4 & Ex. 1 at 5; Dkt. 56, Hamlin Decl. ¶ 2. According to Detective Ahn, an "ASP" is a collapsible baton, which he ceased carrying after he became a detective in January 2015. Dkt. 55, Ahn Decl. ¶ 3.

The officers handcuffed Mr. Osborn and Detective Ahn escorted him outside to the patrol car, searched him, and placed him in the back of his patrol car. Dkt. 55, Ahn Decl., Ex. 1 at 5. Detective Ahn then read Mr. Osborne his *Miranda* rights (*Miranda v. Arizona,* 384 U.S. 436 (1966)). Mr. Osborne asked to see his lawyer and Detective Ahn did not ask Mr. Osborne any questions pertaining to the case. Dkt. 55, Ahn Decl., Ex. 1 at 5. Detective Ahn transported Mr. Osborne to the jail, where he met Detective Aldridge. Detective Aldridge filled out the probable cause statement and transferred custody of Mr. Osborne to the Clark County Jail. *Id.*

At no time did Mr. Osborne claim to be injured or in pain when he was being handcuffed, during the drive from Ms. Moreno's residence to the jail, or at any time thereafter. Dkt. 55, Ahn Decl., ¶ 5; Dkt. 56, Hamlin Decl., ¶ 2. According to Detective Aldridge, at the Clark County Jail Intake, arrestees are asked detailed questions about their health. Dkt. 54, Aldridge Decl. ¶ 5. If a suspect is deemed by the jail intake to need immediate medical attention, they direct the transporting officer to have the suspect taken to the hospital first for examination, and only when the hospital clears the suspect may he or she be booked into jail. *Id.* Detective Aldridge states that "[a]t no time" did any of the jail deputies request her to take Mr. Osborne to the hospital. *Id.*

Mr. Osborne's medical intake records are attached to his Amended Complaint. Dkt. 20 at 2-52. Those records reflect that Mr. Osborne's intake was performed by Donna Davin on October 2, 2015. In response to the intake query "is arrestee unconscious, semiconscious,

REPORT AND RECOMMENDATION - 6

bleeding, having breathing problems, mentally unstable or otherwise in need of immediate medical attention, Ms. Davin indicated "No." *Id.* at 1. At a health assessment performed by Brianna Myers on October 14, 2015, Mr. Osborne mentioned "chronic medical conditions," but "[d]enie[d] any limited mobility." *Id*. at 7. Mr. Osborne also denied any injury to his neck, back, or spine. *Id.* at 7-8. Additionally, the exam revealed "[n]o skeletal tenderness of joint deformity." *Id.* at 8. Mr. Osborne "transfer[red] and ambulate[d] independently." Additionally, Mr. Osborne denied being in any "[p]ain [or] [d]iscomfort." *Id.*

On November 17, 2015, over a month after he was placed in the Clark County Jail, Mr. Osborne reported to jail medical staff a "[n]ew onset" of pain, which he described as "[d]ull" and "[i]ntermittent" back pain. *Id.* at 18. According to Mr. Osborne, the "chronic low mid back pain with muscle spasms" stemmed from "5 years [of] moving stone countertops." *Id.* at 48.

Approximately two weeks later, on December 2, 2015, Mr. Osborne filed his lawsuit in this case. Dkt. 1 and 1-1.

On June 8, 2016, Mr. Osborne pleaded guilty to violating a domestic-violence no contact order, residential burglary-domestic violence, and tampering with a witness-domestic violence. Dkt. 53, Lloyd Decl., Ex. A at 1; Ex. B at 1. He was sentenced to 33 months in prison. *Id.*, Ex. B at 4. In his statement filed with the court with his plea, Mr. Osborne said:

> **On or about October 2, 2015, in Clark County Washington, with knowledge that the Clark County District Court had previously issued a no contact order pursuant to RCW 10.99 in case 5z0177812, I knowingly violated the order by having contact with Desiree Moreno, and at the time I had two previous no-contact order violation convictions. Also, at the same time and place, I entered Desiree Moreno's dwelling located at 15311 NE 87th Street, Vancouver Washington, and that was unlawful as I was prohibited so by the no-contact order, and I had the intention of having contact with Desiree in violation of the order when I entered the dwelling. Also, between November 11, 2015 and November 24, 2015, I attempted to induce Desiree to either testify falsely or to withhold testimony or absent herself from the legal**

REPORT AND RECOMMENDATION - 7

**proceedings that were ongoing. Desiree is someone I have been in a dating relationship with.**

*Id*, Ex. A at 10 (boldface in original).

Mr. Osborne was deposed on October 12, 2016. Dkt. 53, Lloyd Decl., Ex. C. At his deposition, Mr. Osborne testified to his belief that it was Detective Ahn — not Deputy Earhart — who slammed the "baton or flashlight" into the back of his neck. *Id.*, Ex. C at 78:20-25. However, he also testified that he suffered only low back pain from the incident. He did not testify that he had sustained any injury from the baton. *Id.*, Ex. C at 80:17-81:9. Mr. Osborne was unable to articulate any facts showing that Sgt. Hamlin did anything improper on October 2, 2015. *Id.*, Ex. C at 72:21-73:7, 82:3-6. Sgt. Hamlin confirmed by declaration that the only force he applied was using body weight to hold Mr. Osborne down until he was handcuffed. Dkt. 56, Hamlin Decl. ¶ 2.

## STANDARD OF REVIEW

### A. Summary Judgment

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its

REPORT AND RECOMMENDATION - 8

affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248. In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

**B.     42 U.S.C. § 1983**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct,

REPORT AND RECOMMENDATION - 9

does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

## C. Qualified Immunity

Prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. In analyzing a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## DISCUSSION

### A. Section 1983 Liability - Detective Ahn and Sgt. Hamlin for Excessive Force

"The use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir.1986). "The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted." *Id*.

REPORT AND RECOMMENDATION - 10

Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). To determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations omitted). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S. 1, 22–27 (1968). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (citing *Terry,* 392 U.S. at 20–22).

The court's consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id*. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). If a law enforcement officer has the right to arrest someone, the officer has "the right to use some degree of physical coercion or threat thereof to effect" that arrest. *Graham*, 490 U.S. at 396. *See*, e.g., *Ryburn v. Huff*, 565 U.S. 469, 132 S.Ct. 987, 991, 181 L.Ed.2d 966 (2012) (warning judges to "be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation").

//

//

REPORT AND RECOMMENDATION - 11

### 1. Nature and Quality of Intrusion

The dispositive issue in the case with regard to the liability of Detective Ahn and Sgt. Hamlin is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 386. In other words, the reasonableness of the particular use of force must be judged from the perspective of a reasonable officer on the scene and not with 20/20 vision of hindsight. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001). Thus, the issue here is whether under the circumstances, Detective Ahn and Sgt. Hamlin actions were objectively reasonable in light of the circumstances. The Court concludes that they were.

Prior to their arrival at Ms. Moreno's home, the officers were armed with the following: (1) information the defendant was at Ms. Moreno's home, in violation of a valid no contact order prohibiting Mr. Osbone from having contact with Ms. Moreno; (2) Detective Aldridge had probable cause to arrest Mr. Osborne for nine prior violations of a no contact order which listed Ms. Moreno as the protected person; (3) Mr. Osborne had two pending domestic violence cases, one of which involved Ms. Moreno as the victim; and (4) Mr. Osborne had two prior convictions for violating no contact orders.

During their contact with Ms. Moreno the officers felt that her responses to them were for the benefit of Mr. Osborne and not the officers. Finally, Ms. Moreno told Detective Ahn "to pretend to arrest her and then take her to a police car and then we could get Lucas out of the house." Dkt. 55-1, p. 5. The officers then found Mr. Osborne hiding in a closet.

Mr. Osborne's conclusory statement that he did not resist arrest and that he posed no threat does not create a genuine issue of material fact. In evaluating the nature and quality of the intrusion, the Court must consider "the type and amount of force inflicted" in arresting Mr.

REPORT AND RECOMMENDATION - 12

Osborne. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir.1994). Although force can be unreasonable even without physical blows or injuries, *Bryan v. MacPherson*, 630 F.3d 805, 824 (9th Cir.2010), the presence of injuries can be relevant in evaluating the degree of force used. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001); *Foster v. Metropolitan Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (allegations of injury without medical records or other evidence of injury insufficient to establish excessive force).

Here, Mr. Osborne's allegations of injury are not supported by his medical records and there is no other evidence of injury sufficient to establish that he was subjected to excessive force. At summary judgment, Mr. Osborne cannot rely upon mere allegations in his amended complaint, but must set forth specific facts showing that there exists a genuine issue for trial – he must "produce at least some significant probative evidence tending to support" his allegation that he sustained injuries as a result of his arrest. *See Smolen*, 921 F.2d at 963. He has failed to do so.

It is undisputed that Mr. Osborne was hiding from the police and in violation of a valid no contact order. As noted by Sgt. Hamlin in his declaration, "[w]e ordered Osborne to lie on the ground, which is done for officer safety when taking a suspect into custody. Osborne refused to lie on the ground and stiffened up his body when either Detective Ahn or Deputy Earhart placed his hands on him. Osborne was taken to the ground and handcuffed." Dkt. 56, p. 2. When Mr. Osborne "stiffened up his body" he showed signs of resistance and added additional justification for the officers taking him to the ground in order to effectuate the arrest.

While Mr. Osborne claims that he was kneed in the stomach and thrown on the ground after being handcuffed, the facts show that he sustained no injures as a result of his arrest and that he made no complaints of any injuries related to the arrest until he filed this litigation. The

REPORT AND RECOMMENDATION - 13

officers had the right to use some degree of physical force to arrest Mr. Osborne and the shoves of which he complains do not rise to the level of a constitutional violation. As the Ninth Circuit has recognized, "[p]olice officers, however, are not required to use the least intrusive degree of force possible . . . . Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Forrester v. City of San Diego,* 25 F.3d 804, 807-808 (9th Cir. 1994).

### 2. Countervailing Governmental Interests at Stake

The Court is required to take into consideration "the countervailing governmental interests at stake," which "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The objective reasonableness inquiry must account for "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). The Ninth Circuit has recognized, "[w]hen officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning. Indeed, more officers are killed or injured on domestic violence calls than on any other type of call." *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005). To this end, "[t]he volatility of situations involving domestic violence" makes them particularly dangerous." *Id.* Accordingly, an officer is generally afforded more discretion in the amount of force employed when attempting to bring a domestic violence suspect into custody. *Mattos*, 661 F.3d at 450.

It is undisputed that Mr. Osborne was being arrested for multiple violations of a domestic violence No Contact Order. (Dkt. 55, Ahn Decl., Ex. 1; Dkt. 54, Aldridge Decl., Ex. 1.)

REPORT AND RECOMMENDATION - 14

Additionally, Mr. Osborne was in violation of a No Contact Order by being at Ms. Moreno's house, he refused to come to the door despite multiple requests by the officers, and hid in the closet to avoid apprehension. In light of the domestic violence nature of the call, there was a significant governmental interest in bringing Mr. Osborne into custody quickly and without further incident.

Based on the foregoing, the undersigned concludes that neither Sgt. Andy Hamlin nor Detective Charlie Ahn violated Mr. Osborne's constitutional right to be free from the use of excessive force and Mr. Osborne's claims against them should be dismissed with prejudice. In light of the fact that the Court concludes there was no constitutional violation, the issue of qualified immunity need not be addressed.

**B.      Municipal LiabIlity – City of Vancouver**

Municipalities are subject to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, the City of Vancouver can be liable under § 1983 only upon proof that (1) an employee violated the plaintiff's constitutional right, (2) "the city had a policy, practice, or custom which amounted to 'deliberate indifference' to the constitutional right," and (3) that policy "was the 'moving force' behind the constitutional violation." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (*quoting Monell*, 436 U.S. at 690- 91 and *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)). Failure to meet any one of these elements compels dismissal of the § 1983 claim against the City. Mr. Osborne has presented no evidence in support of his claim against the City.

Because there is no evidence that any City of Vancouver employee violated Mr. Osborne's constitutional rights, this forecloses any Section 1983 claim against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no

REPORT AND RECOMMENDATION - 15

constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Gregory v. County of Maui*, 523 F.3d 1103, 1109 (9th Cir. 2008); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001).

Accordingly, the City of Vancouver should be dismissed as a party to this lawsuit.

**C.     Conspiracy Liability**

Mr. Osborne includes the term "conspiracy liability" in his Amended Complaint. Dkt. 23 at 4. He includes no factual allegations of any conspiracy in his amended complaint and there is no evidence to support any conspiracy theory. Accordingly, the Vancouver Defendants are entitled to dismissal of this claim.

**D.     Vancouver Police Department**

"In order to bring an appropriate action challenging the actions, policies or customs of a local governmental unit, a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred." *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) (holding that the Seattle Police Department is not a legal entity capable of being sued under § 1983) (citing *Nolan v. Snohomish County*, 59 Wn. App. 876, 883 (1990)).

Mr. Osborne named the VPD as a defendant in his original and first amended complaints (Dkts. 6, 15), but did not name the VPD in his Amended Complaint. Dkt. 23. However, the docket still lists the VPD as an active defendant. The Clerk is directed to amend the Court's docket to reflect that the claim against VPD was terminated.

REPORT AND RECOMMENDATION - 16

**CONCLUSION**

Based on the foregoing, the Court finds that the motion for summary judgment of the Vancouver Defendants (Dkt. 51) be **GRANTED** and all claims against them in this lawsuit be **dismissed with prejudice**. The Clerk should also be directed to amend the Court's docket to reflect that the claim against VPD was terminated.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the Report and Recommendation for consideration on **March 10, 2017,** as noted in the caption.

**DATED** this 17th day of February, 2017.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17