UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUCAS OSBORNE,

                            Plaintiff,

     v.

VANCOUVER POLICE, CITY OF
VANCOUVER, CLARK COUNTY
SHERIFF'S OFFICE, SGT. ANDY
HAMLIN, ALAN EARHART,
CHARLIE AHN, SGT. EASTMAN,
JOSH GONZALES,

                            Defendants.

No. C15-5877 BHS-KLS

**REPORT AND RECOMMENDATION**
**Noted for:  March 31, 2017**

     Defendants Clark County Deputy Alan Earhart and Clark County Sheriff Deputy James

Eastman assert that they are entitled to qualified immunity and seek dismissal of Plaintiff Lucas

Osborne's claims against them on that basis.  The Clark County Sheriff's Office[1] moves for

dismissal on the grounds that it is not a legal entity capable of being sued in a 42 U.S.C. § 1983

action.  Dkt. 68.  The Clark County Defendants' motion for summary judgment was filed on

December 20, 2016.  *Id.*  On the same day, the Clark County Defendants provided notice to

plaintiff pursuant to *Woods v. Carey*, 684 F.3d 934, 935, 940–41 (9th Cir. 2012).  Dkt. 52.  Mr.

Osborne failed to timely file a response to the motion – his response would have been due

---

[1] Named as the Clark County Sheriff's Department in plaintiff's amended complaint.

REPORT AND RECOMMENDATION - 1

January 16, 2017.  Other filings submitted by Mr. Osborne, which the Court has not considered as appropriate and timely responses to the motion, are discussed in more detail below.

Having reviewed the motion for summary judgment, declarations, the Amended Complaint (Dkt. 23), and balance of the record, and for the reasons set forth herein, the undersigned recommends that the Clark County Defendants' motion for summary judgment be granted.

### FIILINGS BY PLAINTIFF AFTER 12/20/16

On January 9, 2017, the Court received letters from Mary Eibl and Liana Graf with their description of Mr. Osborne's arrest.  Dkts. 75 and 76.  Although they purport to be affidavits, they are not signed under oath and they are not attached to a motion or response.  Hearsay cannot be considered in the context of summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 778-79 (9th Cir. 2002).  Both letters are unsworn, out-of-court statements that are being offered to prove the truth of the matters asserted therein.  Accordingly, the letters have not been considered.

On January 27, 2017, Mr. Osborne filed a "Motion to Summary Judgment With Disputed Facts" and noted the filing as a motion for consideration on February 10, 2017.  Dkt. 80.  It is not entirely clear if Mr. Osborne intended his filing to be a separate motion for summary judgment or a response to one of the then pending motions for summary judgment (Dkts. 52, 57, 68), although his filing was not timely as to any of the motions.  The Court declined to consider the filing as a response to the first two motions for summary judgment (Dkts. 52 and 57), which are the subject of separate and pending reports and recommendation.  The Court also notes that Mr. Osborne's filing focuses almost primarily on whether police had lawful authority to enter the residence – a fact that is not at issue in Mr. Osborne's amended complaint (and for which he has

REPORT AND RECOMMENDATION - 2

no standing to assert as he was at the home in question in violation of a No Contact Order). The only reference to one of the Clark County defendants is the conclusory statement that Sgt. Eastman engaged in excessive force.[2]

Mr. Osborne also appears to request additional time to assert "a negligence claim that can take place and [sic] supplemental claim." Dkt. 80, p. 4. (Dkt. 80 at 4.) Mr. Osborne never asserted anything in his pleadings that would have put defendants on notice that he intended to pursue a state law claim of negligence. Moreover, a plaintiff cannot raise a new claim for the first time in opposition to summary judgment. *Navajo Nation v. U.S. Forest Serv*., 535 F.3d 1058, 1080 (9th Cir. 2008) ("where … the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Pickern v. Pier 1 Imports, Inc*., 457 F.3d 963, 968-69 (2006) (same).

Finally, Mr. Osborne appears to request additional time to obtain the sworn testimony of Ms. Moreno, Liana Graf (his mother), and Mary Eibl (his mother's caregiver). Dkt. 80, pp. 4-5. To obtain relief under Rule 56(d), a party "must show that (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence

---

[2] In his deposition, Mr. Osborne states, as to all defendants, "[t]hey all did an illegal search and seizure, warrantless search." Dkt. 71, Declaration of Jane E. Vetto, Exhibit 1, at 60:1-7. However, the Court's reading of the amended complaint is that it only presents a claim of excessive force. Moreover, as correctly noted by defendants, Mr. Osborne has no standing to bring a Fourth Amendment claim of illegal search and seizure of Ms. Moreno's house as he was at her home in violation of a no contact order.

REPORT AND RECOMMENDATION - 3

1    sought exists, and that it would prevent summary judgment. *Employers Teamsters Local Nos.*

2    *175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir. 2004). Mr.

3    Osborne merely states that these persons were "all [there] that day," but fails to specify in

4    affidavit form what each would say and how this would successfully defeat summary judgment.

5    Moreover, a district court can properly deny a request for a continuance if the party seeking

6    additional time "has failed diligently to pursue discovery in the past." *Id*. (citations and internal

7    quotation marks omitted). Other than what appears to be five days in segregation, Mr. Osborne

8    has not articulated any reason why he has been unable to conduct discovery or obtain sworn

9    statements from his own witnesses within the discovery time allowed by the Court (which

10   expired in November 2016) or within the additional time Mr. Osborne requested and was granted

11   to respond to the prior motions for summary judgment.

12           Despite having ample time to engage in discovery, respond to the summary judgment

13   motions, and provide competent summary judgment evidence, Mr. Osborne has failed to do so.

14   There is no basis for a Rule 56(d) continuance.

15                        **PLAINTIFF'S CLAIMS AND ASSERTED FACTS**

16           Mr. Osborne's only claim is that all the named defendants used excessive force when

17   they arrested him on October 2, 2015. In his amended verified complaint, Mr. Osborne alleges

18   that Vancouver Police and Clark County officers came to the residence of his girlfriend, Desiree

19   Moreno, searching for him and although they were told repeatedly that Mr. Osborne was not

20   there and Ms. Moreno made multiple calls to 911 asking for the officers to leave the property,

21   they arrested Ms. Moreno and located Mr. Osborne in the master bedroom. Mr. Osborne claims

22   that he did not resist arrest or pose any threat but states that he put his hands in the air and did as

REPORT AND RECOMMENDATION - 4

he was directed.  He alleges that even though he was not resisting, the officer threw him against

the television, threw him on the bed, and while on the bed, double-lock handcuffed him, kneed

him in the stomach, and threw him to the ground.  "While still handcuffed and on the ground

with my face slamed [sic] into the ground, Detective Ahn jumped on his back injuring him again

and then slammed his metal baton in his neck."  Mr. Osborne further alleges that after the

officers took him outside, they refused him access to shoes and slammed him up against the

house and then against the SUV in the driveway.  Dkt. 23 (Amended Complaint), at 3.  Mr.

Osborne seeks damages for back and knee pain.  *Id.*, at 4.[3]

Mr. Osborne's amended complaint contains no specific factual allegations against Alan

Earhart or James Eastman and no factual allegations at all against the Clark County Sheriff's

Office.

### DEFENDANTS' STATEMENT OF FACTS

Mr. Osborne has been arrested in Clark County eleven times since 2002 for numerous

domestic violence (DV) assaults and other charges.  Dkt. 72, Declaration of Jane E. Vetto,

Exhibit 1.  On July 30, 2015, Mr. Osborne was arrested for domestic violence assault and Clark

County District Court placed a No Contact Order on him, which prohibited any sort of contact

between Mr. Osborne and girlfriend, Desiree Moreno, until July 30, 2020.  *Id.,* Exhibit 2.  On

October 2, 2015, Sgt. James Eastman and Deputy Alan Earhart were called to assist the

Vancouver Police Department (VPD) in the arrest of Mr. Osborne at the residence of Desiree

Moreno located at 15311 NE 87th Street in Vancouver, Washington.  Dkt. 70, Declaration of

---

[3] Mr. Osborne also asks for "emotional distress of the loss of my unborn child of 1.5 million," along with punitive damages.  Dkt. 23 at 4.  Mr. Osborne's claims on behalf of his girlfriend and his girlfriend's mother were previously dismissed.  Dkt. 19, at 2.

REPORT AND RECOMMENDATION - 5

James Eastman, ¶ 3; Dkt. 69, Declaration of Alan Earhart, ¶ 3.  Both officers were informed of the fact that Mr. Osborne was at Ms. Moreno's resicence in violation of a valid no contact order. *Id.*

When Sgt. Eastman arrived, Deputy Earhart was stationed in the front yard in a position where he could see the front and one side of the house.  Dkt. 70, Eastman Decl., ¶ 4.  VPD Detective Charlie Ahn was at the front door and Department of Corrections Community Corrections Officer Joshua Gonzales was on the other side of the house.  *Id*.  Sgt. Eastman spoke with Deputy Earhart, who told him that Ms. Moreno was refusing entry and the VPD was preparing a search warrant.   Dkt. 70, Eastman Dec., ¶ 4.  Sgt. Eastman went to the front door where VPD Detective Charlie Ahn was standing and holding the door open with his foot on the jam.  Ms. Moreno was just inside the door.  He then confirmed that the containment of the residence was secure and joined Deputy Earhart at his position in the front yard.  *Id*.  As this was a VPD arrest, Deputy Earhart and Sgt. Eastman were there to provide back up.  *Id.*

Sgt. Andy Hamlin, with the VPD Domestic Violence Unit, arrived at the scene and then joined Detective Ahn at the front door.  Dkt. 70, Eastman Dec., ¶ 6.  A few minutes later, Detective Ahn escorted Ms. Moreno out to Deputy Earhart's  patrol car in handcuffs.  He placed her in the car and then motioned for Sgt. Eastman to join him at the front of the car for a confidential conversation.  *ld*.  Sgt. Eastman was informed that Detective Ahn and Sgt. Hamlin had negotiated a scenario with Ms. Moreno "whereby they would appear to arrest her and go into the house after, when, in fact, the arrest was a ruse and Ms. Moreno had given them permission to enter the house to arrest Lucas Osborne."  Dkt. 70, Eastman Decl., ¶ 6.  VPD asked Sgt. Eastman and Deputy Earhart to release Ms. Moreno once VPD had Mr. Osborne in custody and

REPORT AND RECOMMENDATION - 6

had left the residence.  Sgt. Eastman  remained outside watching Ms. Moreno in the patrol car.

At no time did Sgt. Eastman ever speak with, interact with, or in any way touch or come in

contact with Mr. Osborne.  *Id.*, ¶ 8.  Sgt. Eastman was present when the officers brought Mr.

Osborne out and placed him in a VPD car.  He testified that Mr. Osborne's eyes were bloodshot

and watery, that he had an odor of intoxicants on his person, his speech was slurred, and he

appeared intoxicated.  *Id.*, ¶ 7.

Deputy Earhart testified that Ms. Moreno wanted law enforcement to fake arrest her and

he verbally verified this with her when she was brought to his patrol car.  She allowed law

enforcement to enter her residence, told them the last known location of Mr. Osborne (the

bedroom), and knew that the officers intended to arrest him.  Dkt. 69, Earhart Decl., ¶ 4.

Sgt. Hamlin, Detective Ahn and Deputy Earhart then entered the house, loudly

announced their presence,  and began a slow clear.  Dkt. 69, Earhart Decl., ¶ 4.  As Deputy

Earhart cleared the kitchen and living room area, Deputy Earhart heard Sgt. Hamlin and

Detective Ahn yell commands to an unknown person.  *Id.*  Deputy Earhart went to their location

at a back bedroom and saw Mr. Osborne at the open doorway to a closet where he'd been hiding.

Deputy Earhart heard Sgt. Hamlin and Detective Ahn order Mr. Osborne to lie on the floor as he

was under arrest.  Mr. Osborne refused to comply and yelled obscenities at them.  It appeared to

Deputy Earhart that Mr. Osborne intended to have a physical altercation with them.  One of the

VPD officers grabbed Mr. Osborne and attempted to force him to the ground all the while giving

him verbal commands.  Mr. Osborne refused to comply and attempted to remain in a standing

position.  Both VPD Officers then used body weight and strength to force Mr. Osborne to the

floor.  *Id.*  Deputy Earhart states that this all occurred very quickly between three men in a small

REPORT AND RECOMMENDATION - 7

space.  Mr. Osborne ended-up in a prone position near the bedroom door where Deputy Earhart had been standing in the hallway.  He saw Mr. Osborne resist all attempts to control his movements and handcuffing.  *Id.*

In addition to his service pistol, Deputy Earhart also carries less lethal weapons of pepper spray and an extendable baton.  Dkt. 69. Earhart Dec., ¶ 5.  After Mr. Osborne was on the floor in a prone position, Deputy Earhart assisted by holding him in place with his baton.  *Id.*  The VPD Officers were then able to place handcuffs on Mr. Osborne.  At no time did Deputy Earhart strike Mr. Osborne with baton or hands.  The baton was used only as a tool to control and limit Mr. Osborne's movement so he could be placed in handcuffs.  Once Mr. Osborne was handcuffed, Deputy Earhart stopped his efforts to control him.  *Id.*

After they cuffed him, the VPD officers took Mr. Osborne to be booked in the jail.  Dkt. 69, Earhart Decl., ¶ 12.  After Mr. Osborne was gone, Sgt. Eastman and Deputy Earhart released Ms. Moreno from her "fake" arrest.  Dkt. 69, Earhart Decl., ¶ 6.  As VPD arrested Mr. Osborne, neither Sgt. Eastman nor Deputy Earhart completed an arrest report.  Dkt. 69, Earhart Decl., ¶ 7; Dkt. 70, Eastman Decl., ¶ 9.  All reports and statements were completed by VPD Domestic Violence detectives.  *Id.*; *see also*, Dkt. 71, Vetto Decl., Exhibit 3.

On June 8, 2016,  Mr. Osborne pled guilty to several charges.  Dkt. 71, Vetto Decl, Exhibit 4.  In his statement filed with the Court with his plea, Mr. Osborne stated:

> On or about October 2, 2015, in Clark County, Washington, with knowledge that the Clark County District Court had previously issued a no contact order pursuant to RCW 1099 in case 5 is the 017-7812, I knowingly violated the order by having contact with Desiree Merino, and at the time I had 2 previous no contact order violation convictions.  Also, at the same time and place, I entered Desiree Merino's dwelling located at 15311 NE. 87th St., Vancouver, WA, and that was unlawful as I was prohibited so by the no contact order, and I had the intention of having contact with Desiree in violation of the order when I entered the dwelling.

REPORT AND RECOMMENDATION - 8

1

Also, between November 11, 2015 and November 24, 2015, I attempted to induce
Desiree to either testify falsely or to withhold testimony or absent herself from the
legal proceedings that were ongoing.  Desiree is someone I have been in a dating
relationship with.

2

3

4    Dkt. 71, Vetto Decl., Exhibit 4, p. 14.  In making this admission, Mr. Osborne pled guilty to

5    violating a domestic violence No Contact Order, residential burglary-domestic violence, and

6    tampering with a witness-domestic violence.  *ld.*

7

When asked why he was suing Deputy Earhart, Mr. Osborne testified in his deposition:

8

Q:  Okay.  I'm asking you about Earhart.  You said you don't  know what he
looked like.  Is it fair to say you don't remember what he was wearing?

9

10

A:  I can't recall what everybody was wearing.

11

Q:  You said you're suing him because he was involved.  How was he involved?
What did he do?

12

13

A:  He participated in an unlawful act.

14

Q:  What did he do to you?  Tell me.

15

A:  They all did an illegal search and seizure, warrantless search.

16

Q:  Can you name anything specific that Deputy Earhart did on October 2, 2015,
that you're suing him for?

17

18

A:  At this time I don't know.

19    Dkt. 71, Vetto Decl, Exhibit, page 59 lines 17-25; page 60 lines 1-7.

20

When asked his reasons for suing Sgt. Eastman, Mr. Osborne testified:

21

Q:  Okay, how about Sgt. Eastman?

22

A:  Sergeant Eastman, he would be an authority figure, and there is conspiracy
liability and municipal liability - I don't  have my notes in front of me-illegal act
is happening by a group of officers, then you can come after the supervisor, the
supervisor position, because he is to enforce all of the rules and policies and
procedures are followed.

23

24

25

26

REPORT AND RECOMMENDATION - 9

Dkt. 71, Vetto Decl., Exhibit 5 page 60 lines 8-15.

When asked about his injuries, Mr. Osborne testified:

Q:  When you were booked into the jail, did you - at  intake, did you complain of any injuries to the intake nurse?

A:  My back.

Q:  You told them that you had back pain?

A:  Yes I did.

Q:  Did you say anything else, any other injuries that you noted?

A:  I don't think so.

Dkt. 71, Vetto Decl., Ex. 5, page 63, line 25; page 64, lines 1-8.

Mr. Osborne also testified that after booking, he was seen by jail medical staff for back pain he related to his arrest.  Specifically, he testified that when he met with medical personnel, he told them that he had back pain because of his arrest.  *Id.*, Ex 5, page 64, lines 22-25. However, Mr. Osborne's medical records do not support this claim.

Mr. Osborne's medical intake records are attached to his Amended Complaint.  Dkt. 20 at 2-52.  Those records reflect that Mr. Osborne's intake was performed by Donna Davin on October 2, 2015.  In response to the intake query "is arrestee unconscious, semiconscious, bleeding, having breathing problems, mentally unstable or otherwise in need of immediate medical attention, Ms. Davin indicated "No."  *Id.* at 1.  At a health assessment performed by Brianna Myers on October 14, 2015,  Mr. Osborne mentioned "chronic medical conditions," but "[d]enie[d] any limited mobility."  *Id*. at 7.  Mr. Osborne also denied any injury to his neck, back, or spine.  Id. at 7-8.  Additionally, the exam revealed "[n]o skeletal tenderness or joint

REPORT AND RECOMMENDATION - 10

deformity." *Id.* at 8.  Mr. Osborne "transfer[red] and ambulate[d] independently."  Additionally, Mr. Osborne denied being in any "[p]ain [or] [d]iscomfort."  Id.

On November 17, 2015, over a month after he was placed in the Clark County Jail, Mr. Osborne reported to jail medical staff a "[n]ew onset" of pain, which he described as "[d]ull" and "[i]ntermittent" back pain.  *Id.* at 18.  According to Mr. Osborne, the "chronic low mid back pain with muscle spasms" stemmed from "5 years [of] moving stone countertops."  *Id.* at 48.  In his deposition, Mr. Osborne denied ever receiving treatment for back pain prior to his arrest on October 2, 2015, but his medical records reflect that in 2011 he was seen by jail medical staff for "chronic" back pain.  Dkt. 71, Vetto Decl., Ex. 5, page 66, lines 19-21.

Approximately two months after his arrest, Mr. Osborne filed his lawsuit in this case. Dkt. 1 and 1-1.

### STANDARD OF REVIEW

**A.    Summary Judgment**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its

REPORT AND RECOMMENDATION - 11

affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248. In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

**B.    42 U.S.C. § 1983**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct,

REPORT AND RECOMMENDATION - 12

does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

**C.    Qualified Immunity**

Prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.  In analyzing a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**DISCUSSION**

**A.    Section 1983 Liability – Sgt. Eastman and Deputy Earhart**

"The use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir.1986).  "The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted." *Id*.

REPORT AND RECOMMENDATION - 13

1    Under the Fourth Amendment, officers may only use such force as is "objectively

2 reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). To

3 determine whether the force used was reasonable, courts balance "the nature and quality of the

4 intrusion on the individual's Fourth Amendment interests against the countervailing

5 governmental interests at stake." *Id*. at 396 (citations omitted). Our Fourth Amendment

6 jurisprudence has long recognized that the right to make an arrest or investigatory stop

7 necessarily carries with it the right to use some degree of physical coercion or threat thereof to

8 effect it. *See Terry v. Ohio*, 392 U.S. 1, 22–27 (1968). "The 'reasonableness' of a particular use

9 of force must be judged from the perspective of a reasonable officer on the scene, rather than

10 with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (citing *Terry,* 392 U.S. at 20–22).

11    The court's consideration of "reasonableness must embody allowance for the fact that

12 police officers are often forced to make split-second judgments – in circumstances that are tense,

13 uncertain, and rapidly evolving – about the amount of force that is necessary in a particular

14 situation." *Graham,* 490 U.S. at 396–97. "Not every push or shove, even if it may later seem

15 unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id*. at 396

16 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). If a law enforcement officer has

17 the right to arrest someone, the officer has "the right to use some degree of physical coercion or

18 threat thereof to effect" that arrest. *Graham,* 490 U.S. at 396. *See,* e.g., *Ryburn v. Huff*, 565 U.S.

19 469, 132 S.Ct. 987, 991, 181 L.Ed.2d 966 (2012) (warning judges to "be cautious about second-

20 guessing a police officer's assessment, made on the scene, of the danger presented by a particular

21 situation").

REPORT AND RECOMMENDATION - 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 1.  Nature and Quality of Intrusion

The dispositive issue in the case with regard to the liability of Sgt. Eastman and Deputy Earhart is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 386.  In other words, the reasonableness of the particular use of force must be judged from the perspective of a reasonable officer on the scene and not with 20/20 vision of hindsight.  *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001).   Thus, the issue here is whether under the circumstances, Sgt. Eastman and Deputy Earhart actions were objectively reasonable in light of the circumstances.  The Court concludes that they were.  In particular, the Court notes that Sgt. Eastman was not involved in the arrest of Mr. Osborne and Mr. Osborne has failed to present any evidence that Sgt. Eastman violated his constitutional rights.  Sgt. Eatment is entitled to qualified immunity.

As has been previously established in this case, prior to their arrival at Ms. Moreno's home, VPD officers were armed with the following: (1) information Mr. Osborne was at Ms. Moreno's home, in violation of a valid no contact order prohibiting Mr. Osbone from having contact with Ms. Moreno; (2) Detective Aldridge had probable cause to arrest Mr. Osborne for nine prior violations of a no contact order which listed Ms. Moreno as the protected person; (3) Mr. Osborne had two pending domestic violence cases, one of which involved Ms. Moreno as the victim; and (4) Mr. Osborne had two prior convictions for violating no contact orders.  Officer Earhart knew Mr. Osborne was in Ms. Moreno's house in violation of the no contact order and had been called in as backup to Ms. Moreno's house.

REPORT AND RECOMMENDATION - 15

1       When Ms. Moreno was brought to Deputy Earhart's patrol car, she verbally verified that

2   she wanted the officers to fake arrest her, gave law enforcement permission to enter her house,

3   and told them that she had last seen Mr. Osborne in the bedroom.

4       Mr. Osborne's  conclusory statement that he did not resist arrest and that he posed no

5   threat does not create a genuine issue of material fact.  In evaluating the nature and quality of the

6   intrusion, the Court must consider "the type and amount of force inflicted" in arresting Mr.

7   Osborne.  *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir.1994).   Although force can be

8   unreasonable even without physical blows or injuries, *Bryan v. MacPherson*, 630 F.3d 805, 824

9   (9th Cir.2010), the presence of injuries can be relevant in evaluating the degree of force used.

10  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001); *Foster v.*

11  *Metropolitan Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (allegations of injury without

12  medical records or other evidence of injury insufficient to establish excessive force).

13      Here, Mr. Osborne's allegations of injury are not supported by his medical records and

14  there is no other evidence of injury sufficient to establish that he was subjected to excessive

15  force.  At summary judgment, Mr. Osborne cannot rely upon mere allegations in his amended

16  complaint, but must set forth specific facts showing that there exists a genuine issue for trial – he

17  must "produce at least some significant probative evidence tending to support" his allegation that

18  he sustained injuries as a result of his arrest.  *See Smolen*, 921 F.2d at 963.  He has failed to do

19  so.

20      It is undisputed that Mr. Osborne was hiding from police and was in violation of a valid

21  no contact order.  As noted by Deputy Earhart, Mr. Osborne refused to comply with the orders of

22  Sgt. Hamlin and Detective Ahn to lie on the floor and instead yelled obscenities at the officers.

REPORT AND RECOMMENDATION - 16

When it appeared he intended to have a physical altercation with the officers, they took him to the ground by using their body weight and strength. According to Deputy Earhart, this occurred very quickly in a small space and even after Mr. Osborne was in a prone position, he continued to resist all attempts to control his movements and to allow the officers to handcuff him. Deputy Earhart assisted at that time by holding Mr. Osborne in place with his baton.

While Mr. Osborne claims that he was kneed in the stomach and thrown on the ground after being handcuffed, the facts show that he sustained no injures as a result of his arrest and that he made no complaints of any injuries related to the arrest until he filed this litigation. The officers had the right to use some degree of physical force to arrest Mr. Osborne and the shoves of which he complains do not rise to the level of a constitutional violation. As the Ninth Circuit has recognized, "[p]olice officers, however, are not required to use the least intrusive degree of force possible . . . . Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Forrester v. City of San Diego,* 25 F.3d 804, 807-808 (9th Cir. 1994).

### 2.  Countervailing Governmental Interests at Stake

The Court is required to take into consideration "the countervailing governmental interests at stake," which "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The objective reasonableness inquiry must account for "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). The

REPORT AND RECOMMENDATION - 17

Ninth Circuit has recognized, "[w]hen officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning.  Indeed, more officers are killed or injured on domestic violence calls than on any other type of call."  *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).  To this end, "[t]he volatility of situations involving domestic violence" makes them particularly dangerous."  *Id.*  Accordingly, an officer is generally afforded more discretion in the amount of force employed when attempting to bring a domestic violence suspect into custody.  *Mattos*, 661 F.3d at 450.

It is undisputed that Mr. Osborne was being arrested for multiple violations of a domestic violence No Contact Order.  (Dkt. 55, Ahn Decl., Ex. 1; Dkt. 54, Aldridge Decl., Ex. 1.)  Additionally, Mr. Osborne was in violation of a No Contact Order by being at Ms. Moreno's house, he refused to come to the door despite multiple requests by the officers, and hid in the closet to avoid apprehension.  In light of the domestic violence nature of the call, there was a significant governmental interest in bringing Mr. Osborne into custody quickly and without further incident.

Based on the foregoing, the undersigned concludes that Deputy Alan Earhart's involvement was minimal and that he did not use excessive force against Mr. Osborne.   Mr. Osborne's claims against him should be dismissed with prejudice.  Deputy Earhart is entitled to qualified immunity.

**B.    Municipal Liability – Clark County Sheriff's Office**

Municipalities are subject to suit under § 1983.  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978).  However, to bring an appropriate action challenging the actions, policies or customs of a local governmental unit, a plaintiff must name the county or city itself as a party to

REPORT AND RECOMMENDATION - 18

1  the action, and not the particular municipal department or facility where the alleged violation

2  occurred.  *Id.*; *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792, 796 (1990);

3  *Bradford v. City of Seattle*, 557 F. Supp.2d 1189, 1207 (W.D. Wn. 2008) (the Seattle Police

4  Department is not a legal entity capable of being sued under 42 USC §1983).

5       Because the Clark County Sheriff's Office is not a legal entity capable of being sued

6  under 42 U.S.C. § 1983, all claims against it should be dismissed.  Moreover, Mr. Osborne has

7  provided no proof of any official policy, practice, or custom that was the moving force behind

8  any violation of his constitutional rights.  Accordingly, the Clark County Sheriff's Office should

9  be dismissed as a party to this lawsuit.

10 **C.    Conspiracy Liability**

11      Mr. Osborne includes the term "conspiracy liability" in his Amended Complaint.  Dkt. 23

12 at 4.  He also testified that he sued Sgt. Eastman as part of the "group of officers" based on a

13 conspiracy and municipal liability theory.  Dkt. 71, Vetto Decl., Exhibit 5 page 60 lines 8-15.

14 However, Mr. Osborne included no factual allegations of any conspiracy in his amended

15 complaint and there is no evidence to support any conspiracy theory.  Accordingly, the Clark

16 County Defendants are entitled to dismissal of this claim.

17                                   **CONCLUSION**

18      Based on the foregoing, the Court finds that the motion for summary judgment of the

19 Clark County Defendants (Dkt. 68) be **GRANTED** and all claims against them in this lawsuit be

20 **dismissed with prejudice**.

21      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

22 Procedure, the parties shall have fourteen (14) days from service of this Report and

REPORT AND RECOMMENDATION - 19

Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the Report and Recommendation for consideration on **March 31, 2017,** as noted in the caption.

**DATED** this 13th day of March, 2017.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20